Case number 22-7142. Andre Ferguson, at balance, versus Washington Metropolitan Area Transit Authority. Mr. Tucker, for the at balance. Mr. Guest, for the appellate. Good morning, counsel. Mr. Tucker, please proceed when you're ready. Good morning, judges. Justices, I am Charles Tucker. I'm here to present on behalf of Mr. Andre Ferguson. In this matter, the trial court abused its discretion when it ruled on the defendant's motion for a summary judgment as a matter of law. This morning, I'll be arguing three main points to support that. One, Mr. Court erred in determining the issues. First, that Mr. Ferguson's claims were time-barred. Two, that there was no adverse employment actions and found no discrimination on the basis of race. Three, most importantly, the plaintiff was engaging in protected activity at all times, and it was affirmed that he reported race prior to being denied opportunities at promotion. When the court found that the decision-makers were different people, this clearly was not supported by the record. In fact, WMATA continues to contradict itself on several matters in regards to whether or not the actors and the reasons for the denial of a employment opportunity to Mr. Ferguson was actually based on race. In fact, we believe that the depiction in WMATA, which was granted summary judgment, is flawed as a matter of law because it's like a house of cards. At the base of it, if you pull out one of the cards, the entire house will fail. It's based on a predisposition as ruled by the district court that they provided a legitimate, non-pretextual reason for Mr. Ferguson not to have been granted an opportunity in being interviewed. Not only were the actors the same in the 2017 and the 2019 denial of his employment opportunity, but most importantly, the reasons proffered by WMATA clearly are not consistent with what the record has been submitted. Let me take the arguments in turn. Whether or not Mr. Ferguson's claims of hostile work environment, retaliation, and race are time-barred. It's our position they are not, and it's supported by case law. We would like to present to the court National Railway Passenger Court v. Morgan, 536 U.S. 101, 122nd Supreme Court case. We believe this is persuasive in that it deals with a case involving hostile work environment claims. In this case, the court pointed out that hostile work environment claims are quite different from cases involving discrete acts. Most importantly, by the quoting from the case, because their very nature involves repeated conduct. We submit to the court in this case, the 2017 non-selection. Matter of fact, he wasn't even not selected. He was never interviewed. At the time of the 27th non-selection process, Mr. Ferguson had operated in that position six months as an acting director. He had proffered to the department an electronic program that would benefit the way the business was able to do its job. What happened? He wasn't even considered. He was reviewed and given a role model by the performance evaluation as submitted for his leadership and his ability to lead the team. They selected Mr. Gregory Collins. Yes. What is your best evidence that these decisions were on the basis of race? That these employment decisions were on the basis? Sure. Our best evidence that the decisions were on the basis of race was because the actors involved acted accordingly. I would answer your question in two parts. One, the pattern and culture of WMATA has a history of racial discrimination. That's not something that is being made up. WMATA has admitted it to their leaders and teams in meetings itself. The admission is one. Two, the actors as proffered provide conflicting information as to why Mr. Ferguson was not selected. They proffered affidavits that are not supported by the facts of this case, of what actually occurred. Mr. Ferguson drew attention to the individual that was selected over him, Mr. Gregory Ferguson, saying this individual has a racist issue and I've had problems with in the past on the basis of race. What happens? He gets selected for the job of which Mr. Ferguson was never considered. Two, during that tenure, a hostile environment based on racial discrimination takes charge against Mr. Ferguson. Three, to my most important point, what Mr. Ferguson feared the most occurred. In August of 2019, Mr. Collins was terminated for workplace violation of workplace policy when he was violently and aggressively yelling at an African-American female employee. See, it's not like Mr. Ferguson made this stuff up. He voiced his concerns, raised it, thus putting himself in protected activity, but they allowed him to remain under his supervision for Mr. Collins until it finally manifested into an incident where they finally had to act. So again, to answer your question, General, the combined best evidence that we have that this was non-selection on 2017 was on the basis of race was because, one, Mr. Ferguson was very qualified for the job. How do we know this? He was operating in the position. Two, he was recognized for the operation of the position and the reasons proffered by WMATA simply don't make sense. He was put on a performance improvement plan. Is that right? Judged by WMATA's account, he was, but when and why is what is beg the question and the record does not support it. The trial court found that Mr. Ferguson didn't proffer a legitimate basis for his defense that these were pretextual. They were actually based on race. But looking at the record, it's actually the opposite. What's presented is, one, there were emails. In the record, there are emails that discover that they discovered that the PIP that was allegedly presented to Mr. Ferguson didn't even look right because the signature looked transposed by their own admission. But Mr. Ferguson's account, he was never presented it. This was something that was created and it's not just my words. If we look at the transcript, the trial court looked at the transcript, Mr. Ferguson looked at page 178, we would understand how the PIP was actually created. It was a conversation with Mr. Palmieri. Mr. Palmieri says, oh, by the way, I was going to consider you for the position. This was in 2019, Judge. We were going to consider you for the position this time, but you're on a PIP. Mr. Ferguson responds, I've never been on, I'm not on a PIP. It wasn't if you're not on a PIP, I will create one. And if we look at the emails that are in the record, that's exactly what they did. In fact, in the conversation with HR, they have concerns at the appearance of it and the way it was, A, never reported to HR, and it wasn't properly presented to the employee. So the creation and the words by Mr. Palmieri, oddly enough, Judge, it points out, Chief Judge, in Mr. Palmieri's affidavit, he kind of left that part out. Again, this house of cards clearly fails because in his affidavit, he doesn't point out the fact that he had a conversation with Mr. Ferguson. And he told him if the PIP wasn't there, that he would create. I'm sure my colleagues don't have additional questions for you at this point. We'll give a little time for rebuttal. Okay. Thank you. Hey, Mr. Tucker. Mr. Gus. Good morning, your honors. And may it please the court. The decision by the district court, granting WMATA summary judgment was a correct one. Want to start with the failure to exhaust issue, which was pretty clear. WMATA sits in a different place in the District of Columbia. You have to file a charge discrimination within 180 days, as opposed to 300 days. There were three of Mr. Ferguson's allegations, one being the failure to promote to the TAMO position in 2017, the denial of the opportunity to present a program to the executive management team, and the late receipt of his paycheck in 2019. The court correctly concluded, the district lower court correctly concluded that those three allegations were outside the 180 day limit. And so they were, they were not considered because Mr. Ferguson failed to exhaust those claims. And that they're backed up by number one, the April 30th letter. You don't necessarily have to file a, have it in your charge of discrimination if there's other filings to the EEOC indicating what, you know, what a employee is prepared to file this charge. But even in that letter, there's no mention at all of those three issues, the 2017 TAMO failure to promote, the failure to promotion in 2017, no mention of the denial of the opportunity to present to EASI, to the executive management team, and the late paycheck issue. So those three allegations were properly disposed of. In terms of the retaliation claim, the lower court also ruled that Mr. Ferguson failed to exhaust his allegations under Title VII for retaliation. Specifically, that he failed to mention in his EEOC letter, well, EEOC letter actually, what his retaliation was, he failed to check the box as well. So those claims were properly not in front of the court, and the lower court made the correct decision that those, retaliation claims were not exhausted. WMATA, I want to reserve on the back end that the lower court did address Mr. Ferguson's hostile work environment. And WMATA's argument was that, first of all, Mr. Ferguson's allegations were more discrete, meaning that there were more, they weren't a pattern of a hostile work environment, but he was trying to piggyback his hostile work environment claim based on actual incidents of what he alleged adverse actions. So under his hostile working claim, he included the failure to promote in 2017, he included the paycheck issue, those issues that were properly, that weren't, that were not exhausted from the EEOC. So the lower court did address those issues, WMATA, in its brief, does state that we believe the hostile work environment claim was failed, did not, was not exhausted. Again, we have the charge of discrimination, it's not in his letter to the EEOC. The hostile work environment box is not checked in the original charge of discrimination. Mr. Ferguson's... That doesn't, it doesn't matter that much that the check, that the box wasn't checked, right? It doesn't, no, yeah, sure, it doesn't matter that much, but it has to be some, in particular, some narrative to show the EEOC what they're investigating. And it wasn't there, there was nothing indicating that his allegation was a hostile work environment in the charge of discrimination that would have alerted the EEOC that these were also claims that needed to be investigated. So that, WMATA kept this argument in for the sake of the court that the hostile work environment was also not properly exhausted. Moving on to the real MUTA claim, the legitimate non-discriminatory reason for his, for not promoting or hiring Mr. Ferguson to the TAMO position in 2019. This is where the facts are important here. Mr. Ferguson received a 7 on his end of year, 2019 end of year evaluation. That was in August of 2019. At that time, he's reporting to Mr. Collins. A 7 on WMATA's end of year employment evaluation mandates a performance improvement plan. What happened is that the following day, and this was to him on August 1st. On the following day, Mr. Ferguson goes to WMATA's EAP program and takes leave. So, and he stays on leave until October 1st, 2019. In between that time, WMATA has reorganized the department that Mr. Ferguson was in. So, and also Collins is terminated for unrelated issues, terminated for yelling at a colleague. She happened to be African-American, but there's no evidence that it was, he yelled at his colleagues because of anything to do with race. She just happened to be African-American, but that was not why he was terminated. He was terminated because he's a supervisor yelling at our employee. There's no evidence that there were any racial connotation to that incident, but he's terminated in August 16th, 2019. Mr. Pallamary, because of the reorganization, now becomes Mr. Ferguson's supervisor. And this is when he has every intention to interview Mr. Ferguson for that TAMO position, because Mr. Ferguson has been at the time, because Mr. Pallamary was not supervising Mr. Ferguson until the reorganization, Mr. Ferguson is so much high up in middle management. So of course, he would be considered if they were to hire for this director position. At that time, Mr. Pallamary is told that from HR, that there is an employee that he has inherited that should be on a performance improvement plan. At the same time, Mr. Pallamary is observing because Mr. Ferguson comes back off for leave in October. He actually is personally observing Mr. Ferguson's interaction with his colleagues, and he doesn't like what he sees. And at that point, he inquires with our HR department, and they revealed to him that Mr. Ferguson was the one that received the seven on his 2019 end of year evaluation, and he mandated a PIP. That's why Mr. Pallamary, at that time, because of his observations of Mr. Ferguson, decided that, okay, I'm not going to interview him for the 2019, not interviewing for the THO position in 2019, but also the PIP needs to be formalized because he received the seven. And that's when Mr. Ferguson is placed on a performance improvement plan. But the decision not to promote Mr. Ferguson was not strictly because of the performance improvement plan. It was also because of Mr. Pallamary's personal observations. And that is Lamarda's non-discriminatory reason for not promoting Mr. Ferguson. Another... You also have the non-discriminatory reason. I understood from your... Sorry, Your Honor. I thought from your submissions, I also understood that you had a non-discriminatory reason to the effect that there was a belief that Mr. Ferguson was on a performance improvement plan. That is as well, because the seven on the end-of-year evaluation mandated the PIP. So, yes, it's not... It was finally formalized and after the decision, somewhat after the decision, but when Mr. Pallamary learns that he's supposed to be on a performance improvement plan because of this seven, that weighed into the decision not to promote Mr. Ferguson. Your Honor, and that is Lamarda's argument. I reserve the right of my time. Thank you, counsel. Mr. Tucker, we'll give you two minutes for a rebuttal. Briefly. Hostile work environment claims by its nature, supported by case laws seen in our brief, clearly illustrate the reasons that they should be taken into consideration outside of this jurisdictional bar by simply checking off a box. Lamarda's position is that these are isolated incidents and don't really rise to the level of the exception. The exception which indicates where a person in Mr. Ferguson's position can show a pattern in practice. As I stated earlier, this was in fact a pattern in practice. Sean Kamen, the same he submits it again and he's still not interviewed in 2017, even though he occupied the position. Second, when he's not interviewed in 2019, the same individual comes to him and said, is involved in the decision making of non-selection. The PIP that they speak of, arguably whether it was created and when it was created, Sean Kamen was not his supervisor, but he was involved again in this process. His name appears on the doctored text. How do we know it's doctored? When we look at their own evidence, exhibit five and six in the record, support two performance plans that were allegedly given to Mr. Ferguson at the mid-year. In it, it details a lot of information and in one of the versions, it shows seven that WMATA justifies as the reason for his non-selection. Oddly enough, at the last question underneath the signatures, it presents the opportunity for WMATA to indicate that he would be put on a PIP. In neither version is the PIP box checked off, showing that there was never really a reason to put him on a PIP, that it was part of a pattern in practice of racial practices by WMATA. Thank you, counsel. Thank you to both counsel. We'll take this case under submission. Thank you.
judges: Srinivasan, Henderson, Rao